10 So.2d 744

## BRIDGEFORTH v. STATE.

### 8 Div. 164.

Supreme Court of Alabama.

Nov. 27, 1942.

Wm. N. McQueen, Atty. Gen., and L. S. Moore, Asst. Atty. Gen., for the State.

R. B. Patton and D. U. Patton, both of Athens, for appellant.

BOULDIN, Justice.

On the trial the defendant was put on a showing for several absent witnesses. The State admitted the showings; meaning, admitted that the several witnesses, if present, would testify to the facts disclosed in the showing made for such witnesses.

During the trial one of these witnesses, Wiley Fletcher, appeared. The defendant did not introduce him as a witness and, of course, did not introduce the showing prepared for him.

On cross-examination of defendant, a witness in his own behalf, he testified, "I signed a showing for Wiley Fletcher and I swore to it before the clerk." The record proceeds:

"And the following question was asked the witness:

"Q: You knew that Wiley Fletcher was not present and yet you made a statement there and swore to it that if Wiley Fletcher was present he would swear he was present at that killing?

"Whereupon the defendant objected to the question and the Court overruled the objection and the defendant then and there duly and legally excepted.

"And then the following occurred: The solicitor held in his hand a showing prepared for Wiley Fletcher and, exhibiting it to the defendant, asked the following question:

"Q: Did you ever read the thing? And the witness answered: 'No sir'.

"Whereupon the Court stated: 'This is limited to the credibility of the witness and bears only on the question as to what weight you will give defendant's testimony.'

"Question by the State: You did not read the thing? A: No sir.

"Q: Nobody read it to you? A: No sir.

"Q: You swore to it because your lawyers told you to? A: I signed my name to it. I thought I was supposed to sign it.

"Q: Well, did your lawyer say to you that you were supposed to sign it? A: Yes, sir, he told me to sign my name there and I swore to it before the clerk."

After defendant rested his case, the State, in rebuttal, introduced Wiley Fletcher as a witness, who testified:

"'I was down there the day of the shooting; I have never talked to the defendant about this case. I never told anybody that I saw that shooting. I never told anybody that I was standing by that truck.'

"Then the following question was asked the witness:

"A: And you never did tell anybody what you would tell under oath?

"And the witness answered, 'No Sir.'

"Whereupon the defendant objected to the examination of the witness further because the witness was being examined upon a showing which had never been offered in evidence in this case and the Court overruled the motion and stated that he would permit the question and would limit the testimony altogether to the credibility of the defendant as a witness for himself; that is the only purpose for which this question is being allowed and that is the only function this evidence is to have in the case.

"Whereupon the defendant then and there duly and legally reserved an exception.

"And the witness continued to testify saying: 'I never told anybody I would swear I saw Flint Cain go in the cornfield and pick up bricks.'

"Whereupon the defendant then and there objected to the question on the same grounds assigned to the next preceding question and the Court overruled the objection and the defendant then and there duly and legally excepted.

"And the witness continued to testify and said: 'I never told anybody that I knew Flint Cain's reputation was bad and I will not swear it now.'

"Whereupon the State offered in evidence a showing prepared by the defendant for the witness, Willie Fletcher, which was never introduced in the evidence and the defendant objected to the introduction of the showing and the Court overruled the objection of defendant, stating that the Court would limit it altogether to the credibility of the defendant as a witness in his own behalf; that's the only purpose that it is in here.

"Whereupon the defendant then and there duly and legally excepted."

Defendant's counsel took the stand, and testified defendant had been in jail since the killing occurred; that many witnesses or a succession of witnesses had been brought to the attorney's office in an effort to find out what they would say; that this showing was prepared by associate counsel "under the order of the court to be back in court within 15 or 20 minutes and we were required to write the showings for quite a number of absent witnesses and each of us prepared showings as best we could and we brought them to our client in the courthouse and told him to sign, and none of them were ever read to him."

The court excluded all such statements, except that the showings were not read over to defendant. Exceptions were duly reserved.

Other evidence disclosed the killing occurred at a public gathering of colored people where many persons were present or thereabout.

■ This procedure was in substance the same as pursued in Brown v. State, 142 Ala. 287, 38 So. 268, and held reversible error. The discussion appearing on pages 294-296 of 142 Ala., 38 So. on pages 269, 270 of that opinion, is so full and direct as to call for no elaboration. We refer to what was there said. It appears this was the sole error upon which the case was reversed. We observe several other showings were introduced in the instant case. Certainly these proceedings would tend to discredit all of them.

The judgment must be reversed on the authority of Brown v. State, supra.

■ Evidence for defendant tended to show the fatal shots were fired as deceased was advancing upon defendant in a threatening position with rocks in his hands. Defendant testified the first shot was purposely fired over the head of deceased. Other witnesses testified that there was a short pause between the first and other shots from an automatic pistol. The question, "Did you shoot at Flint the first shot you made?", and the answer, "No, sir, I shot to scare him.", were merely in repetition of above evidence, and objection thereto was sustained without error. We do not think the data presented on motion for new trial sufficient to show a "quotient verdict." One of the given charges sent out with the jury, when returned, had written in pencil on the back of it a list of the names of the twelve jurors, and opposite each name a number. There was no footing of these numbers, nor quotient shown. If footed and quotient obtained, it would have been 26+. The verdict fixed the punishment at twenty-five years. This was the number opposite the name of six of the jurors. This data, standing alone, fairly disclosed no more than a memorandum of a roll call in the jury room to ascertain the views of each juror as to the period of punishment. It is entirely consistent with such purpose looking to further negotiations to get together on the term of sentence.

Some clerical errors in making copy of indictment and lists of jurors to be served on defendant were urged as ground for quashing the venire. Such inaccuracies or carelessness should not be indulged in so grave judicial proceedings. Probably self-correcting in this case, they need not occur again, and we think further treatment unnecessary.

Reversed and remanded.

Gardner, C. J., and FOSTER and LAWSON, JJ., concur.